IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| CARL CROCKER, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION 15-0619-WS-B |
| | ) |
| LIFESOUTH COMMUNITY BLOOD | ) |
| CENTERS, INC., *et al.*, | ) |
| | ) |
|    Defendants. | ) |

**ORDER**

This recently removed matter comes before the Court *sua sponte*. On December 16, 2015, the undersigned entered an Order directing the parties to submit supplemental briefs "confined to jurisdictional issues relating to the amount in controversy." (Doc. 4, at 2.) The parties having complied with that directive (*see* docs. 10, 11), the jurisdictional issue is now ripe for disposition.[1]

**I.   Background.**

Plaintiff, Carl Crocker, filed a Complaint against LifeSouth Community Blood Centers and various fictitious defendants in the Circuit Court of Perry County, Alabama. In his Complaint, Crocker asserted a half-dozen state law tort claims against LifeSouth, advancing theories of negligence, wantonness, outrage, invasion of privacy, negligent hiring/ training/ retention/ supervision, and "zone of danger." All of those causes of action stem from an incident on September 17, 2015, when Crocker gave blood at a mobile blood unit operated and administered by LifeSouth.

---

[1] Defendant's memorandum of law does not comport with formatting specifications of the Local Rules, which require that "text must be double-spaced" in papers presented for filing. General L.R. 5(a)(1). Defendant's filing also runs afoul of the requirement that "[f]ont must be 12 point or larger, ***including footnotes***." General L.R. 5(a)(2) (emphasis added). Notwithstanding these defects, the Court in its discretion will accept and consider defendant's submission in its current form.

In his pleading, Crocker complains that LifeSouth conducted the September 17 blood drive improperly in numerous respects, including the following: (i) LifeSouth did not conduct reasonable screening procedures before drawing his blood; (ii) LifeSouth administered the blood drive even though its premise (*i.e.*, that if Crocker and other offenders gave blood, they would receive credit towards unpaid court fines and community service obligations) violated company policies and national standards; (iii) the LifeSouth nurse/technician who collected Crocker's blood spattered his blood across other uncovered (and possibly used) needles on the table next to his arm, placing Crocker in danger of contamination; (iv) LifeSouth technicians did not change their gloves after each donation; and (v) LifeSouth ultimately discarded all blood donated during the September 17 drive, presumably in recognition of the lack of proper screening procedures and the attendant risk of contamination. Based on these allegations, Crocker contends that he "suffered severe emotional distress, anxiety and anguish … after learning that the proper screening procedures were not in place and then later learning that the blood was potentially contaminated and therefore discarded." (Complaint, ¶ 19.) Elsewhere in the Complaint, Crocker indicates that he "will suffer from this incident for the remainder of his life." (*Id.*, ¶¶ 29, 38, 46.) No physical injuries are identified in the pleading and it does not appear that Crocker has sought out or received medical treatment of any kind in the wake of the September 17 incident; rather, plaintiff's injuries are apparently confined to mental anguish, anxiety and distress arising from his "rational fear of getting sick from contaminated blood or needles." (*Id.*, ¶ 56.)

The Complaint does not quantify the damages sought. Instead, plaintiff's "Prayer for Relief" contains only general references to damages "in excess of the jurisdictional minimum" of the Perry County Circuit Court;[2] "[m]edical, incidental, hospital and service expenses" that do not appear to have been incurred; unspecified "[m]edical monitoring" expenses that likewise appear not to have been incurred; unspecified "[p]unitive and exemplary damages;" and "[a]ttorney's fees, expenses and costs," although Crocker identifies no legal theory that might support a colorable argument for fee-shifting. (*Id.*, at 9-10.)

On December 8, 2015, LifeSouth filed a Notice of Removal (doc. 1) in this District Court, predicating subject-matter jurisdiction on the diversity provisions of 28 U.S.C. § 1332. In

---

[2] By the plain language of Alabama Code § 12-11-30(1), that amount is $6,000, exclusive of interest and costs.

so doing, LifeSouth maintained that the threshold jurisdictional amount in controversy prescribed by § 1332 is satisfied here. (Doc. 1, ¶¶ 13-14.) This Order scrutinizes that assertion.

## II. The Amount in Controversy Issue.

A removing defendant must establish the propriety of removal under 28 U.S.C. § 1441 and, therefore, must demonstrate the existence of federal jurisdiction. *See Friedman v. New York Life Ins. Co.*, 410 F.3d 1350, 1353 (11th Cir. 2005) ("[i]n removal cases, the burden is on the party who sought removal to demonstrate that federal jurisdiction exists") (citation omitted); *Sammie Bonner Const. Co. v. Western Star Trucks Sales, Inc.*, 330 F.3d 1308, 1310 (11th Cir. 2003) ("Because Western Star sought removal to federal court, it bore the burden of proving that Bonner's claims satisfied the minimum amount in controversy requirement."). Because removal infringes upon state sovereignty and implicates central concepts of federalism, removal statutes must be construed narrowly, with all doubts resolved in favor of remand. *See University of South Alabama v. American Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999) (explaining that strict construction of removal statutes derives from "significant federalism concerns" raised by removal jurisdiction).

There being no federal question presented in the Complaint, LifeSouth's Notice of Removal hinges on diversity of citizenship. Under 28 U.S.C. § 1332(a), federal courts have original jurisdiction over all civil actions between citizens of different states where the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. *See Underwriters at Lloyd's, London v. Osting-Schwinn*, 613 F.3d 1079, 1085 (11th Cir. 2010) ("For federal diversity jurisdiction to attach, all parties must be completely diverse … and the amount in controversy must exceed $75,000.") (citations omitted). "In light of the federalism and separation of powers concerns implicated by diversity jurisdiction, federal courts are obligated to strictly construe the statutory grant of diversity jurisdiction … [and] to scrupulously confine their own jurisdiction to the precise limits which the statute has defined." *Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1268 (11th Cir. 2000) (citations omitted).

LifeSouth (as the removing party) bears the burden of showing that the amount in controversy is satisfied. *See Dudley v. Eli Lilly and Co.*, 778 F.3d 909, 913 (11th Cir. 2014) ("We have repeatedly held that the removing party bears the burden of proof to establish by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional minimum."). That said, it is well settled that LifeSouth "is not required to prove the amount in

controversy beyond all doubt or to banish all uncertainty about it." *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 754 (11th Cir. 2010). Rather, LifeSouth may meet its burden by showing either that it is "facially apparent from the pleading itself that the amount in controversy exceeds the jurisdictional minimum," or that there is "additional evidence demonstrating that removal is proper." *Roe v. Michelin North America, Inc.*, 613 F.3d 1058, 1061 (11th Cir. 2010) (citations omitted). What LifeSouth may not do, however, is resort to "conjecture, speculation, or star gazing" to show that the jurisdictional threshold is satisfied. *Pretka*, 608 F.3d at 754. In evaluating the sufficiency of a removing defendant's jurisdictional showing, courts need not "suspend reality or shelve common sense," but instead "may use their judicial experience and common sense in determining whether the case stated in a complaint meets federal jurisdictional requirements." *Roe*, 613 F.3d at 1062 (citations omitted).

In support of removal, LifeSouth minimizes its burden by selectively quoting Supreme Court precedent for the proposition that "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, --- U.S. ----, 135 S.Ct. 547, 554, 190 L.Ed.2d 495 (2014). (*See* doc. 11, at 2-3.) But LifeSouth overlooks the very next sentence of the *Dart Cherokee* opinion, which reads, "Evidence establishing the amount is required by § 1446(c)(2)(B) only when the plaintiff contests, ***or the court questions***, the defendant's allegation." *Dart Cherokee*, 135 S.Ct. at 554 (emphasis added). The December 16 Order specifically and directly questioned LifeSouth's allegation in its Notice of Removal that the amount in controversy exceeds the jurisdictional threshold; therefore, LifeSouth cannot satisfy its burden of proof by citing *Dart Cherokee* and representing that it has made a "plausible allegation" of jurisdictional sufficiency. This Court having questioned that allegation, more is required.

In both the Notice of Removal and the supporting brief, LifeSouth relies heavily on Crocker's demand for punitive damages, and touts the fact that "Alabama juries routinely award punitive damages in excess of the $75,000 amount in controversy threshold." (Doc. 1, at 7; *see also* doc. 11, at 3.) But a claim for punitive damages in a negligence / wantonness case does not automatically, necessarily vault the amount in controversy over the § 1332 jurisdictional threshold. As this Court has previously observed, a "plaintiff's claim for punitive damages is properly considered in the evaluation of whether defendants have shown that the amount in

controversy exceeds $75,000. But there is nothing talismanic about such a demand that would *per se* satisfy the amount-in-controversy requirement and trigger federal subject-matter jurisdiction." *Lambeth v. Peterbilt Motors Co.*, 2012 WL 1712692, *4 (S.D. Ala. May 15, 2012).[3] What is it about Crocker's particular demand for punitive damages that renders its value so substantial as to surpass the amount-in-controversy threshold? Defendant does not say. Instead, defendant merely cites three factually inapposite cases for the proposition that Alabama juries may award large punitive damage awards even where compensatory damages are minimal. Thus, the removing defendant has made no showing as to the amount of punitive damages at stake that might allow this Court to estimate the value of Crocker's claims without engaging in unvarnished speculation.[4]

---

[3] *See also McRae v. Ellis*, 2015 WL 6694029, *4 (S.D. Ga. Oct. 2, 2015) ("there is no clear estimate as to the amount of punitive damages, and the Court declines to speculate when determining the amount in controversy"); *Earl v. Diebold, Inc.*, 2015 WL 789763, *5 (S.D. Ala. Feb. 25, 2015) (plaintiff's "demand for both compensatory and punitive damages … [does] not render it facially apparent that the amount in controversy in this case exceeds $75,000, exclusive of interest and costs") (footnotes omitted); *Scott v. Ford Motor Co.*, 2015 WL 505674, *5 n.3 (S.D. Ala. Feb. 6, 2015) ("Although Plaintiff seeks punitive damages in this case, … the Court is not convinced that this proves that the amount in controversy exceeds $75,000."); *Dean v. Sears, Roebuck and Co.*, 2014 WL 900723, *6 (S.D. Ala. Mar. 7, 2014) ("Here, the undersigned cannot estimate the value of the Plaintiff's punitive damages claims without engaging in pure speculation."); *George v. Wells Fargo Bank, N.A.*, 2014 WL 61487, *3 (S.D. Fla. Jan. 8, 2014) ("Merely by including a prayer for punitive damages does not meet the amount in controversy requirement."); *Musgrove v. Kellogg Brown and Root, LLC*, 2013 WL 1827583, *5 (S.D. Ala. Apr. 29, 2013) ("[n]ot having been provided any estimate as to compensatory damages, the Court is ill-equipped to speculate as to any punitive damages award" for amount-in-controversy purposes) (citation omitted); *Keach v. Poole*, 2013 WL 441082, *3 (S.D. Ala. Feb. 5, 2013) ("Armory Mobile emphasizes that the complaint also demands punitive damages, but this is not particularly helpful absent a demonstration – as yet lacking – that … the alleged conduct is sufficiently egregious to allow prediction that the amount of punitive damages in controversy is sufficient"); *SUA Insurance Co. v. Classic Home Builders, LLC*, 751 F. Supp.2d 1245, 1255 (S.D. Ala. 2010) ("The Court is not free simply to assume … that the Whites are likely to be awarded substantial punitive damages ….").

[4] To be sure, LifeSouth says that Crocker "emphasizes that his fear of contracting HIV deserves $4 million, or a comparable sum, in damages." (Doc. 11, at 4.) But that is not a fair characterization of the Complaint. In Paragraph 18 of his pleading, Crocker alleges that "[a] Montgomery County couple was awarded $4 million dollars [*sic*] for an incident in which an individual was given HIV-tainted blood during open heart surgery," and LifeSouth had been the defendant in that case because it "did not properly screen/test the blood." (Complaint, ¶ 18.) This paragraph, taken as a whole, does not support a reasonable reading that Crocker is
(Continued)

The point is reinforced by the paucity of indications that Crocker suffered substantial quantifiable compensatory damages.  Indeed, the Complaint identifies no physical injuries, no adverse medical diagnosis, no out-of-pocket expenses that Crocker incurred as a result of LifeSouth's purportedly tortious activity.  While LifeSouth hangs its hat on generic allegations that Crocker "suffered severe emotional distress, anxiety and anguish," and that he "will suffer from this incident for the remainder of his life," there are no facts in the Complaint that would support quantifying those "soft" damages at a substantial level.  Again, Crocker does not allege that LifeSouth made him sick, caused him to contract an illness, exposed him to the HIV virus, or anything of the sort.  He does not even allege that he ever visited a doctor.  Rather, the gravamen of the Complaint is that LifeSouth used risky and careless procedures in conducting a blood drive, making Crocker fearful and upset.  Given the Eleventh Circuit's directives that (i) the amount in controversy cannot be satisfied by conjecture or speculation and (ii) district courts may use judicial experience and common sense in evaluating whether jurisdictional requirements are satisfied, the Court readily concludes that LifeSouth has not met its burden here.  Plaintiff's allegations of mental anguish and emotional distress are too vague, too speculative to support a judicial determination that Crocker's claims surpass the jurisdictional threshold.  We have no facts to show the extent or severity of Crocker's emotional distress for what appears to have been a mere transitory fear of contamination resulting from his observation of imprudent or unwise practices when he participated in the blood drive.

In the end, LifeSouth, as the removing defendant, simply has not met its burden of showing that the § 1332 amount-in-controversy requirement is satisfied.  Again, binding precedent teaches that this requirement is met when it is facially apparent from the pleading that the amount in controversy exceeds $75,000, or when additional evidence demonstrates that removal is proper.  LifeSouth offers no additional evidence, but travels exclusively under the "facially apparent" prong.  Boiled down to its essence, Crocker's Complaint alleges that LifeSouth conducted a blood drive in an unsafe and improper manner, causing Crocker to suffer

---

demanding "$4 million, or a comparable sum," in this case.  Rather, it appears that the point of Paragraph 18 is not to quantify a particular damages demand, but to underscore LifeSouth's culpability by showing that it knew of the importance of proper screening and testing blood donations, yet failed to do so here.  Defendant's attempt to construe Paragraph 18 as a disguised *ad damnum* clause indulges in a leap of logic unsupported by the text of the pleading itself.

distress.  The Complaint does not allege that Crocker contracted or was actually exposed to HIV virus or any communicable disease, that he ever came into contact with contaminated needles or blood, or even that he sought out any medical care whatsoever.  At most, the Complaint merely alleges that LifeSouth did not use best practices because LifeSouth failed to prescreen prospective donors, the technician failed to change gloves after each use, other needles were nearby, and it was improper to conduct a blood drive that traded offenders' blood donations for sentencing credits.  From these well-pleaded facts in the Complaint, it is not facially apparent that the amount in controversy exceeds $75,000.  The Court, relying on judicial experience and common sense, could not conclude otherwise without engaging in impermissible speculation.

### III.   Conclusion.

In sum, LifeSouth has failed to meet its burden of showing that removal jurisdiction properly lies here.  The Notice of Removal predicated federal subject matter jurisdiction exclusively on the diversity provisions of 28 U.S.C. § 1332; however, LifeSouth has not demonstrated that it is more likely than not that the amount in controversy in this case exceeds $75,000, exclusive of interest and costs.  Accordingly, and in light of the legal requirements that diversity jurisdiction be strictly construed and that all doubts be resolved in favor of remand, the Court finds that removal was improvident.  This action is **REMANDED** to the Circuit Court of Perry County, Alabama for want of federal jurisdiction.

DONE and ORDERED this 23rd day of February, 2016.

> s/ WILLIAM H. STEELE
> CHIEF UNITED STATES DISTRICT JUDGE